ELLIS GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@ellisgeorge.com
Christopher W. Arledge (State Bar No. 200767)
  carledge@ellisgeorge.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@ellisgeorge.com
Anthony T. Lombardo (State Bar No. 323216)
  alombardo@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
Willow Health Services, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ELI LILLY AND COMPANY, | Case No. 2:25-cv-03570-AB-MARx |
| Plaintiff, | Hon. André Birotte, Jr.<br>Magistrate Margo A. Rocconi |
| vs. | **NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| WILLOW HEALTH SERVICES, INC., | |
| Defendant. | |
| | [*Filed Concurrently with Request for Judicial Notice; Declaration of Keith J. Wesley; and [Proposed] Order*] |
| | Date:   August 22, 2025<br>Time:   10:00 a.m.<br>Place:   350 West First Street,<br>  Los Angeles, CA 90012<br>  Courtroom 7B |
| | Trial Date:  None Set |

3007558

-1-                                                                        Case No. 2:25-cv-03570-AB (MARx)

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 22, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable André Birotte Jr., United States District Judge for the Central District of California, located in the United States Courthouse, 350 West First Street, Los Angeles, CA 90012, Courtroom 7B, Defendant Willow Health Services, Inc. ("Willow") will and hereby does move this Court to dismiss Plaintiff Eli Lilly and Company's ("Eli Lilly") Complaint without leave to amend pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is made upon the following grounds:

Eli Lilly lacks standing to sue. According to Eli Lilly's own allegations (which must be deemed true at this stage), Eli Lilly does not compete with Willow and has not and cannot sufficiently allege a competitive injury under the three statutes under which it has sued – i.e., California Unfair Competition Law, California False Advertising Law, or the federal Lanham Act. More specifically, Eli Lilly pleads that its tirzepatide-based drugs are *not* advertised or prescribed to treat cosmetic weight loss. (Instead, they are, according to the Complaint, for diabetes, obesity, and sleep apnea.) But Eli Lilly pleads that Willow's tirzepatide-based compounded drugs *are* for "cosmetic weight loss" and that Willow markets them accordingly. Moreover, the only harm pled by Eli Lilly is (a) harm to consumers (which is non-actionable), and (b) vague, implausible reputational harm that courts have held to be inadequate to support standing under the relevant statutes.

Even if Eli Lilly had standing, the Court should still dismiss the Complaint under Rule 12(b)(6) because it does not state a cognizable legal theory for relief. Eli Lilly alleges that nearly two dozen statements it unearthed on Willow's website are false or misleading. But none are actionable. They are not false or deceptive and/or they constitute puffery or non-actionable opinions. Nor has Eli Lilly adequately alleged that the statements are material or caused cognizable harm.

/ / /

3007558

-2-

Case No. 2:25-cv-03570-AB (MARx)

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

This lawsuit is a non-starter. The Court should grant this motion to dismiss and deny leave to amend because the defects in the Complaint cannot be cured.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, the Declaration of Keith J. Wesley filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This Motion is made following a conference of counsel under L.R. 7-3 on June 11, 2025.

DATED:  June 20, 2025                    ELLIS GEORGE LLP
                                                          Keith J. Wesley
                                                          Christopher W. Arledge
                                                          Matthew L. Venezia
                                                          Anthony T. Lombardo


                                                   By:  _____s/ Keith J. Wesley_____
                                                          Keith J. Wesley
                                                          Attorneys for Defendant Willow Health
                                                          Services, Inc.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    INTRODUCTION .......................................................................................... 1

II.   FACTS ........................................................................................................... 2

    A.    The Parties ............................................................................................. 2

        1.    Willow is an Online Telehealth Platform that Connects Patients, Doctors, and Compounding Pharmacies ........................ 2

        2.    Willow Markets Compounded Tirzepatide That "Could Not Be More Different" from Eli Lilly's Tirzepatide-Based Drugs and the Market in Which Eli Lilly Sells. ............... 3

    B.    A Brief Interlude: Eli Lilly's Attacks on Compounding are Irrelevant and Misleading. ........................................................................ 4

    C.    The Allegedly False Statements ............................................................ 5

        1.    Safety and Effectiveness Theory .................................................. 5

        2.    Personalization Theory ................................................................. 6

        3.    Compliance Theory ...................................................................... 6

III.  LEGAL ARGUMENT ................................................................................... 6

    A.    Legal standard on Rule 12(b)(6) motion ............................................... 6

    B.    Eli Lilly's Lanham Act claim fails for lack of statutory standing. ......... 7

    C.    Eli Lilly's FAL and UCL claims fail for lack of statutory standing. .................................................................................................. 10

    D.    The challenged advertisements are not actionable. ............................. 10

        1.    Eli Lilly's Safety and Effectiveness Theory does not provide a basis for relief. ............................................................. 11

            a.    The statements are not deceptive. ..................................... 12

                (i)    Lack of substantiation does not equate to falsity. ............................................................. 12

                (ii)    Eli Lilly cannot conclusorily allege that true statements imply something different than their plain meaning ........................................... 13

            b.    Many of the statements are puffery. ................................. 15

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

**TABLE OF CONTENTS**
(Continued)

| | | | | | Page |
|---|---|---|---|---|---|
| | | c. | | Eli Lilly fails to plead materiality or harm. | 16 |
| | 2. | | Eli Lilly's Personalization Theory does not provide a basis for relief. | | 16 |
| | | a. | | The statements are not deceptive. | 16 |
| | | | (i) | Compounded drugs *are* personalized. | 16 |
| | | | (ii) | There is nothing false or deceptive about Willow's offerings. | 17 |
| | | b. | | The statements are puffery or opinion. | 18 |
| | | c. | | Eli Lilly fails to plead materiality or harm. | 18 |
| | 3. | | Eli Lilly's Compliance Theory does not provide a basis for relief. | | 18 |
| | | a. | | The statements are puffery. | 19 |
| | | b. | | The statements are not false or misleading. | 19 |
| | | c. | | The statements are non-actionable legal opinions. | 20 |
| | | d. | | Eli Lilly fails to plead materiality or harm. | 21 |
| E. | | | | The Court Should Not Grant Leave to Amend Because the Defects in Eli Lilly's Complaint Cannot Be Reasonably Cured. | 21 |
| IV. | CONCLUSION | | | | 22 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
   No. 8:17-cv-01551-DOC-JDE, 2019 WL 4545960 (C.D. Cal. Mar. 27, 2019) ...................................................................................................................... 17

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................ 10, 15, 16, 19

*Ariix v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ............................................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 6, 7, 9

*Bobbleheads.com, LLC v. Wright Bros., Inc.*,
   259 F. Supp. 3d 1087 (S.D. Cal. 2017) ................................................................. 7

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
   590 F.3d 806 (9th Cir. 2010) ................................................................................. 7

*Clinton v. Select Portfolio Servicing, Inc.*,
   225 F. Supp. 3d 1168 (E.D. Cal. 2016) ................................................................. 7

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) ........................................................................... 4, 20

*Cook, Perkiss & Liehe, Inc., v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................................... 18

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
   388 F.3d 990 (7th Cir. 2004) ............................................................................... 19

*CytoSport, Inc. v. Vital Pharm., Inc.*,
   894 F. Supp. 2d 1285 (E.D. Cal. 2012) ............................................................... 11

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
   711 F. Supp. 2d 1074 (C.D. Cal. 2010) ................................................................. 7

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................. 10

## **TABLE OF AUTHORITIES**
### (Continued)

**Page**

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998) ................................................................. 14

*Favell v. Univ. of S. Cal.*,
  No. CV 23-3389-GW-MARx, 2024 WL 751006 (C.D. Cal. Jan. 23,
  2024) .............................................................................................................. 15

*FedEx Ground Package Systems, Inc. v. Route Consultant, Inc.*,
  97 F.4th at 456-57, (6th Cir. 2024) ........................................................ 14, 18

*Finney v. Ford Motor Co.*,
  No. 17-cv-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) .................. 15

*Fusco v. Uber Techs.*,
  No. 17-00036, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ......................... 16, 19

*GovernmentGPT Inc., v. Axon Enter. Inc.*,
  769 F. Supp. 3d 959 (D. Ariz. Mar. 7, 2025) .............................................. 8

*Hong Kong Supermarket v. Kizer*,
  830 F.2d 1078 (9th Cir. 1987) ....................................................................... 9

*In re Gardasil Prods. Liab. Litig.*,
  No. 3:22-MD-03036-KDB, 2025 WL 854377 (W.D.N.C. Mar. 11,
  2025) .............................................................................................................. 21

*Kalin v. Semper Midas Fund, Ltd.*,
  No. 4:21-cv-01062-YGR, 2022 WL 16935782 (N.D. Cal. Oct. 12, 2022) ......... 19

*Knowles v. Arris Int'l PLC*,
  No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ........... 15

*Kurin, Inc. v. ICU Med., Inc.*,
  No. 8:24-CV-00564-FWS-ADS, 2024 WL 5416672 (C.D. Cal. Nov. 8,
  2024) ................................................................................................... 10, 11, 12

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ....................................................................... 13

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
  No. C 10-02605 JW, 2011 WL 5024281 (N.D. Cal. Oct. 13, 2011) .................... 20

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014) ........................................................................................7, 8

*Loomis v. Slendertone Distrib., Inc.*,
 420 F. Supp. 3d 1046 (S.D. Cal. 2019) ................................................................3

*Marco Bicego S.P.A. v. Kantis*,
 No. 17-CV-00927-SI, 2017 WL 2651985 (N.D. Cal. June 20, 2017) .................10

*McMichael v. Cnty. of Napa*,
 709 F.2d 1268 (9th Cir. 1983) ............................................................................9

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
 513 F.3d 1038 (9th Cir. 2008) ...........................................................................15

*Nexus Pharm., Inc., v. Cent. Admixture Pharm. Servs., Inc.*,
 48 F.4th 1040 (9th Cir. 2022) .........................................................................1, 5

*Oestreicher v. Alienware Corp.*,
 544 F. Supp. 2d 964 (N.D. Cal. 2008)................................................................15

*Oracle Int'l Corp. v. Rimini St., Inc.*,
 123 F.4th 986 (9th Cir. 2024) .....................................................................15, 18

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*,
 399 F. Supp. 3d 1018 (C.D. Cal. 2019)................................................................7

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
 902 F.2d 222 (3d Cir. 1990) .........................................................................11, 12

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997)................................................................11, 19, 21

*Strategic Partners, Inc. v. FIGS, Inc.*,
 No. CV 19-2286-GW(KSX), 2019 WL 12435672 (C.D. Cal. Aug. 19,
 2019) ..................................................................................................................12

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
 933 F. Supp. 918 (C.D. Cal. 1996)......................................................................19

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*,
No. CV-18-04189-PHX-JAT, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019) ................................................................................................. 9, 10

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
2020 WL 248164 (D. Ariz. Jan. 16, 2020) ............................................... 8

*ThermoLife International, LLC v. BPI Sports, LLC*,
No. 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022) ..................................... 8

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*,
No. CV 20-9482-DMG, 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021) .........7, 8, 9

*Woodway USA, Inc., v. LifeCORE Fitness, LLC*,
2025 WL 1490301 (S.D. Cal. May 23, 2025) ....................................... 12

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013) ................................................................. 6, 7

**STATE CASES**

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
107 Cal. App. 4th 1336....................................................................... 12

**FEDERAL STATUTES**

21 U.S.C. § 353a(a) ............................................................................... 16

Food, Drug, and Cosmetic Act ("FD&C Act") ....................................... 16, 17, 21

Lanham Act (15 U.S.C. § 1125) ...................................................*passim*

**STATE STATUTES**

California False Advertising Law ("FAL") (Cal. Bus. & Prof. Code
§ 17500) ..................................................................................*passim*

California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code
§ 17200) ..................................................................................*passim*

## TABLE OF AUTHORITIES
### (Continued)

**Page**

**RULES**

F.R.C.P. 9(b) ............................................................................................... 7, 12

F.R.C.P. 11 .......................................................................................................13

F.R.C.P. 12(b)(6) ...................................................................................... 2, 6, 14

**REGULATORY/ADMINISTRATIVE AUTHORITIES**

FDA Regul. Proc. Manual § 4-1-1 ............................................................... 19

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Eli Lilly is on a nationwide campaign against pharmacies that market and sell compounded tirzepatide—i.e., the active ingredient in Eli Lilly's Mounjaro and Zepbound drugs.  This case is one of over 30 filed by Eli Lilly across the country against anyone and everyone in any way related to the marketing or sale of compounded tirzepatide.

Unfortunately for Eli Lilly, it cannot deputize itself as the sheriff of the "tirzepatide police."  No drug company can use the courts to stop pharmacies from compounding with tirzepatide (or any other ingredient).  *See, e.g.*, *Nexus Pharm., Inc., v. Cent. Admixture Pharm. Servs., Inc.*, 48 F.4th 1040, 1050-51 (9th Cir. 2022) (effort to enjoin compounding pharmacy from distributing compounded drug was preempted by federal law).  Nor can Eli Lilly use the courts to stop doctors from prescribing compounded tirzepatide when doctors believe the compounded alternatives are beneficial to patients.  Nor (as particularly relevant here) can Eli Lilly block a telehealth company like Willow from connecting patients with compounding pharmacies and doctors.

Thus, despite devoting much of its Complaint to denigrating what drug compounders are *doing*, Eli Lilly then reverses course and says this case is not really about what drug compounders are *doing* at all.  Instead, Eli Lilly says the case is really about what compounders of tirzepatide are *saying*.  But even if we assume that is true, Eli Lilly runs into a different problem—i.e., it lacks standing to bring the false advertising claims it has alleged.

Eli Lilly is not a deceived consumer, and it thus lacks standing to sue as one.  So Eli Lilly must instead allege some type of cognizable harm to itself.  It not only fails to do so, but it does just the opposite, alleging that it and Willow sell different things to different people.  According to Eli Lilly, its tirzepatide-based drugs and those marketed by Willow "could not be more different," Compl. ¶ 3, and whereas

-1-

Eli Lilly claims that its tirzepatide drugs are strictly used to treat type 2 diabetes, chronic weight management and obstructive sleep apnea, Compl. ¶¶ 38–39, it says Willow "markets and sells [compounded tirzepatide drugs] for 'cosmetic weight loss,'" *id.* at ¶ 3.  Eli Lilly—a "pharmaceutical manufacturer," Compl. ¶ 16—thus lacks standing to sue Willow—a telehealth provider that connects patients with doctors and pharmacies—for false advertising.

Even if this Court were to conclude that Eli Lilly has standing, Eli Lilly's alleged false statements are non-actionable.  In a "shotgun-style pleading," Eli Lilly alleges that nearly two dozen statements on Willow's website are false or misleading.  But none of them are.  Eli Lilly claims that many of Willow's advertisements are not substantiated, but "lack of substantiation" is not a basis for relief without an affirmative showing of falsity or deception, which Lilly cannot show.  Moreover, the majority of the statements are merely puffery and/or opinions.  Finally, Eli Lilly fails to adequately allege  materiality and harm.

The propaganda in the Complaint likely put smiles on many faces in Eli Lilly's PR department and C-Suite.  From a legal perspective, however, the Complaint is a non-starter.  This Court should dismiss this action under Rule 12(b)(6) without leave to amend.

## II.   FACTS

### A.   The Parties

#### 1.   Willow is an Online Telehealth Platform that Connects Patients, Doctors, and Compounding Pharmacies.

Willow is a "technology platform to connect registered users of [its] Website with Physicians and pharmacies for medical consultations and dispensing of medications prescribed by the Physicians."  Willow Health Services, Inc., *Terms and Conditions*, Willow (Nov. 24, 2021), startwillow.com/terms-and-conditions;

Compl. ¶ 1.[1]

**2.      Willow Markets Compounded Tirzepatide That "Could Not Be More Different" from Eli Lilly's Tirzepatide-Based Drugs and the Market in Which Eli Lilly Sells.**

Willow markets on its website, among other things, compounded medications that incorporate tirzepatide—a chemical that Eli Lilly itself touts as assisting in weight loss.  According to Eli Lilly, the product similarities end there.

Eli Lilly alleges that it and Willow are selling different products.  Compl. ¶ 3 ("Willow's compounded tirzepatide drugs could not be more different. One is in oral form, rather than an under-the-skin injection. The other is mixed with additives. It markets and sells both for 'cosmetic weight loss.'").

Eli Lilly also alleges that the two companies sell to very different markets. Eli Lilly claims that its drugs are used only to treat serious medical problems. Compl. ¶ 39 ("Recognizing that obesity is a serious disease and should be treated like one, Lilly has repeatedly and expressly stated that MOUNJARO® and ZEPBOUND® are not approved for—and should not be used for—cosmetic weight loss.").  Eli Lilly claims that Willow sells its drugs to people for far less noble reasons: mere cosmetic weight loss.  Compl. ¶ 36 ("Willow falsely, deceptively, misleadingly, and unfairly markets and sells its compounded tirzepatide to be used 'for cosmetic weight loss'—rather than to treat the serious diseases of diabetes, obesity, and sleep apnea.").

So how then does Eli Lilly claim it was harmed by the sale of dramatically different drugs to wholly different markets using different trademarks and branding? It says very little (only two things, really) in less than one of the 33 pages of its

---

[1] The Complaint is replete with links and cites to the Willow website.  This Court may thus consider the entire website based on the incorporation-by-reference doctrine. *See, e.g.*, *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019).

Complaint.

"***First,*** Willow's unfair, deceptive, misleading, and false practices risk patient safety." Compl. ¶ 88. As shown below, this conclusory statement of harm to third parties does not confer standing on Eli Lilly. Injured patients, if they existed (they do not), might have standing. But Lilly would not.

This is Eli Lilly's other attempt to explain harm: "***Second,*** Willow's unfair, deceptive, misleading, and false practices, including its false and misleading statements, cause irreparable harm to Lilly's brand and customer goodwill by promising results that consumers cannot obtain from Willow's product." Compl. ¶ 89. This is also merely a conclusory statement. It does not allege facts showing how a different company's use of very different drugs in a different market using different trademarks actually impacts Eli Lilly.

Deficient for the same reasons is Eli Lilly's similar statement that "Willow's unfair and deceptive practices endanger patients by luring them away from Lilly's safe and effective FDA-approved medicines in favor of Willow's untested and unapproved drugs—all under false pretenses." Compl. ¶ 9. Again, harm to patients might provide standing for injured patients or the FDA—not for Eli Lilly. And Eli Lilly's fact-free conclusion as to patients being lured away contradicts Lilly's clear and repeated allegations that these are different drugs sold in different markets.

## B.    A Brief Interlude: Eli Lilly's Attacks on Compounding are Irrelevant and Misleading.

Eli Lilly spends several pages of its Complaint denigrating the drug compounding industry (as well as compounded tirzepatide products). Eli Lilly's worldview is contrary to the experiences of the many millions of patients (and their physicians) who rely upon compounded drugs, as well as Congress, which has authorized compounded drugs to be marketed and sold where, as here, FDA-approved drugs are not meeting the needs of individual patients. As the Ninth Circuit explained, Congress sees this issue differently than Eli Lilly does:

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

> Pharmacists and some physicians have long combined, mixed, and altered ingredients in medicines to tailor them to individual patients – a practice known as compounding. For instance, patients allergic to something in the mass-produced, FDA-approved product may need an allergen-free version; patients unable to swallow pills may need a liquid form of the medicine; and children who refuse to take medications because of the taste may need a differently-flavored medicine. Congress does not subject compounded drugs to an approval process it uses for new drugs because valid compounding has traditionally been seen as an appropriate means of customizing existing drugs to the needs of individual patients.

*Nexus Pharms.*, 48 F.4th at 1042. Eli Lilly's histrionics are not supported by even a single allegation of harm caused by compounded tirzepatide dispensed by a pharmacy that works with Willow. Nor does the Complaint explain why doctors would be prescribing compounded tirzepatide if it is dangerous or ineffective. In other words, the propaganda section of the Complaint is irrelevant, at best, and misleading.

### C.    The Allegedly False Statements.

Eli Lilly alleges that Willow engaged in false advertising, in violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, and False Advertising Law ("FAL"), *id*. § 17500, as well as § 43(a) of the Lanham Act, 15 U.S.C. § 1125. Compl. ¶¶ 28–31. Eli Lilly asserts three theories of liability:[2]

### 1.    Safety and Effectiveness Theory

Statement Nos. 1–15 are a hodgepodge of disparate statements that generally speak positively about the benefits of the chemical tirzepatide and/or Willow's compounded tirzepatide, and/or explain how tirzepatide has been shown to result in

---

[2] Exhibit A to the Declaration of Keith J. Wesley enumerates each allegedly actionable statement and provides the numbering scheme used in this brief.

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

weight loss.  *See* Wesley Dec., Ex. A, at 1–4.

Eli Lilly does not allege that the statements are false—e.g., that tirzepatide does *not* assist in weight loss or that oral tirzepatide is *not* effective or that Eli Lilly has tested compounded tirzepatide and found that it does *not* work as advertised. Rather, Eli Lilly seems to be complaining that Willow is touting the benefits of compounded tirzepatide despite lacking substantiation—e.g., clinical studies testing the compounded tirzepatide—as to its effectiveness.  Eli Lilly also appears to speculate that consumers who read about studies of the active ingredient tirzepatide would assume that those studies tested compounded tirzepatide, instead of non-compounded tirzepatide.

### 2.    Personalization Theory

Eli Lilly argues that "Willow sells both its Tirzepatide Drops and Tirzepatide Plus with the promise that they are custom-made, 'personalized' drugs."  Compl. ¶ 7.  This is deceptive, according to Eli Lilly, because "Willow sells standardized compounded tirzepatide drugs in predetermined dosages . . . ." *Id.*  Statement Nos. 16–21 relate to this claim.  *See* Wesley Dec., Ex. A, at 4–5.

### 3.    Compliance Theory

Eli Lilly contends that "Willow falsely claims that the compounding pharmacies with whom it works pass rigorous evaluations and are subject to the same high standards as, for example, Lilly."  Compl. ¶ 8.   Eli Lilly alleges that this is misleading because "Willow sources its drugs from compounding pharmacies who have serial records of regulatory violations." *Id.*  Statement No. 22 relates to this claim.  *See* Wesley Dec., Ex. A, at 5.

## III.   LEGAL ARGUMENT

### A.    Legal standard on Rule 12(b)(6) motion.

To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)). The complaint must plead enough "factual content" so that the court can "draw the reasonable inference that the defendant is liable.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Moreover, "unwarranted inferences are insufficient" to defeat a motion to dismiss," *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010), and a court may "reject, as implausible, allegations . . . too speculative to warrant further factual development," *Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1172 (E.D. Cal. 2016).

Where, like here, a false advertising claim is predicated on fraud, courts in this Circuit usually apply Rule 9(b)'s particularity standard, which requires Eli Lilly to identify in detail the challenged statements and why they are purportedly false or deceptive.  *See, e.g.*, *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010).

**B.** **Eli Lilly's Lanham Act claim fails for lack of statutory standing.**

"[A] plaintiff seeking to pursue a Lanham Act claim must demonstrate standing beyond the typical Article III requirements." *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–130 (2014)). To meet this elevated standing requirement, "a commercial plaintiff must establish that '(1) [its] interests fall within the zone of interests protected by the statute, and (2) [its] injuries are proximately caused by a violation of the statute.'" *Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASx), 2021 WL 4134841, at 7 (C.D. Cal. Aug. 6, 2021) (quoting *Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1034 (C.D. Cal. 2019) (citing *Lexmark*, 572 U.S. at 129)). "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Vampire Fam. Brands*, 2021 WL

4134841, at *7 (quoting *Lexmark*, 572 U.S. at 133).

While Lanham Act standing does not categorically require that plaintiff and defendant engage in direct competition, absent such a relationship, it is difficult to show harm, and district courts routinely dismiss claims against non-direct-competitors for lack of standing.  *See, e.g.*, *GovernmentGPT Inc., v. Axon Enter. Inc.*,  769 F. Supp. 3d 959, 986–988 (D. Ariz. Mar. 7, 2025) (lack of standing where complaint only alleged that plaintiff sought to compete with defendant in the future); *ThermoLife International, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022) (lack of standing where parties operate on different levels of the supply chain); *Vampire Fam. Brands*, 2021 WL 4134841, at *7–8; *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020) (no statutory standing where "Plaintiff and Defendant sell *different products* in *different markets* to *different customer segments*") (emphasis in original).

Here, Eli Lilly does not allege direct competition between it and Willow.  In fact, Eli Lilly pleads the opposite—that Eli Lilly and Willow sell different drugs in different markets.  It says that "Willow's compounded tirzepatide drugs could not be more different" than its products and that Willow markets and sells its drugs for cosmetic weight loss. Compl. at ¶¶ 3, 36. Contrarily, Eli Lilly alleges its drugs "are not approved for—and should not be used for—cosmetic weight loss." *Id.* at ¶¶ 2, 4, 39. Because Eli Lilly defines Willow's market to be cosmetic weight loss and disavows any involvement in that market, there is no possibility that the challenged advertisements could cause an actual or potential Eli Lilly customer to "withhold trade from the plaintiff." Moreover, given Eli Lilly's allegation that its own drugs are not appropriate for those seeking cosmetic weight loss, *id.*, Eli Lilly's allegation that Willow targets the challenged advertisements to those seeking cosmetic weight loss establishes that Willow's advertisements are not directed towards actual or potential Eli Lilly customers, *id.* at ¶¶ 3, 36.

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

Unable to allege that any customers have or would potentially purchase drugs marketed by Willow instead of Eli Lilly's drugs, Eli Lilly alleges two other forms of harm.  First, Eli Lilly alleges that Willow's practices risk patients' safety. Compl. ¶ 88. Eli Lilly, however, has no standing to sue on behalf of individual consumers. *See Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081, 1083 (9th Cir. 1987) (citing *McMichael v. Cnty. of Napa*, 709 F.2d 1268, 1270 (9th Cir. 1983) (holding plaintiff lacked standing to sue on behalf of customers)).

Second, Eli Lilly alleges that if customers have negative experiences with Willow's tirzepatide-based drugs, those customers could come to think negatively about tirzepatide-based drugs in general, thus hurting Eli Lilly's market. Compl. ¶ 89. Eli Lilly offers only speculation about what *could possibly happen* in the future, which is inadequate, and Eli Lilly offers no facts to support what appears to be illogical speculation.  Furthermore, even if the Court were to disregard Eli Lilly's lack of factual support and illogical assumptions (which the Court must do under *Iqbal*), the allegations would still fail. Eli Lilly alleges only potential future harm to the general market for tirzepatide-based drugs. General harm to a market, however, "is an insufficient basis to support a finding of a commercial injury to Plaintiff." *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2019 WL 3840988, at *7 (D. Ariz. Aug. 15, 2019) ("*Am. Fitness Wholesalers*"); *Vampire Fam. Brands*, 2021 WL 4134841, at *7 (same).

*Am. Fitness Wholesalers* is instructive. There, the defendant allegedly engaged in false advertising by failing to describe its dietary supplements as drugs, contrary to FDA-requirements. *Am. Fitness Wholesalers*, 2019 WL 3840988, at *1. The plaintiff argued it had standing because it holds relevant patents and sells ingredients for dietary supplements to third parties, and therefore "has a unique interest in the dietary supplement market and its business is tied to the general popularity of sports nutrition supplements." *Id.* at *1–*2. The court granted a motion to dismiss for lack of standing and held that, again, general harm to a market "is an

insufficient basis to support a finding of a commercial injury to Plaintiff." *Id.* at *7. When considering potential reputational harm, the court noted that the plaintiff did "not allege any facts to show that the use of its licensed technology or sales of patented creatine nitrate decreased, when the decrease occurred, where sales were diverted to, or how it correlated with Defendant's false advertising." *Id.*

So too here. Like in *Am. Fitness Wholesalers*, Willow does not sell a product that competes with plaintiff's products (Mounjaro and Zepbound), and Eli Lilly can allege only general (albeit potential, not actual) harm to the market. Like in *Am. Fitness Wholesalers*, Eli Lilly's allegations of potential harm are conclusory—i.e., Eli Lilly fails to allege that use of its drugs decreased, when that decrease occurred, whom it lost sales to, or how that loss was related to the challenged advertising. Like in *Am Fitness Wholesalers*, Eli Lilly's complaint should be dismissed.

**C.    Eli Lilly's FAL and UCL claims fail for lack of statutory standing.**

Because Eli Lilly lacks standing under the Lanham Act, it *ipso facto* lacks standing under the UCL and FAL, which have stricter requirements. Injuries under the UCL and FAL must involve tangible loss—i.e., "lost money or property." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1136 (C.D. Cal. 2005). Nowhere in the Complaint does Eli Lilly claim any such harm. Eli Lilly thus lacks standing under these statutes. *Marco Bicego S.P.A. v. Kantis*, No. 17-CV-00927-SI, 2017 WL 2651985, at *5 (N.D. Cal. June 20, 2017) ("Plaintiffs do not cite any authority for the proposition that injury to reputation, in the absence of loss of money or property, is sufficient to confer standing under the UCL."); *cf. Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014).

**D.    The challenged advertisements are not actionable.**

Even if Eli Lilly had standing, none of Eli Lilly's theories of liability square with, or can provide a basis for relief under, the Lanham Act, UCL, or FAL. "In the Ninth Circuit, claims of unfair competition and false advertising under the FAL and UCL are substantially congruent to claims made under the Lanham Act." *Kurin, Inc.*

*v. ICU Med., Inc.*, No. 8:24-CV-00564-FWS-ADS, 2024 WL 5416672, at *5 (C.D. Cal. Nov. 8, 2024) (quoting *CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1295 (E.D. Cal. 2012)). The Court may therefore "consolidate[] its analyses of Plaintiff's false advertising claims under federal and state law." *Id.*

A false advertising claim under the Lanham Act (and by extension the UCL and FAL), requires:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (footnote omitted).

"When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod*, 108 F.3d at 1139. And, "[e]ven if an advertisement is not literally false, relief is available . . . if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Id.* at 1140. "Consequently, where the advertisements are not literally false, plaintiff . . . cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually do* react." *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228–29 (3d Cir. 1990) (emphasis in original).

### 1.    Eli Lilly's Safety and Effectiveness Theory does not provide a basis for relief.

Eli Lilly's Safety and Effectiveness Theory, *see* Wesley Dec., Ex. A, at 1–4 (Statements 1–15), does not provide a basis for relief under the Lanham Act, UCL, or FAL because none of the alleged false statements is false or deceptive, many are puffery and/or opinion, and none have been shown to be material or harmful.

### a. The statements are not deceptive.

The challenged statements regarding Safety and Effectiveness are not actionable because they are not false or misleading.

### (i) Lack of substantiation does not equate to falsity.

Eli Lilly's "shotgun-style" allegations are not a model of clarity, but it appears Eli Lilly alleges that Willow's claims that its products can assist with cosmetic weight loss are false because they lack substantiation—e.g., FDA approval or clinical trials. *See* Compl. ¶ 4 ("But no clinical trial has examined tirzepatide for cosmetic weight loss"); *see also id.* ¶¶ 42, 51, 54, 55, 62, 64, 65 (same).  A lack of substantiation is not adequate however to plead falsity or deceptiveness.

"District Courts in the Ninth Circuit have held that, under the heightened Rule 9(b) pleading standard, a plaintiff 'may not sustain false advertising claims based solely on 'lack of substantiation' grounds.'" *Kurin, Inc.*, 2024 WL 5416672, at *7 (C.D. Cal. Nov. 8, 2024) (quoting *Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW(KSX), 2019 WL 12435672, at *6 (C.D. Cal. Aug. 19, 2019)); *accord Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (under California law, "[p]rivate plaintiffs are not authorized to demand substantiation for advertising claims."). A plaintiff cannot simply claim "a defendant's statement lacked support"; it must "particularly allege falsity of the challenged statements." *Strategic Partners*, 2019 WL 12435672, at *6; *see also Sandoz*, 902 F.2d at 229; *Woodway USA, Inc., v. LifeCORE Fitness, LLC*, 2025 WL 1490301, at *3 (S.D. Cal. May 23, 2025) ("a false advertising claim cannot be proved on 'lack of substantiation' grounds") (citation omitted)). Eli Lilly's allegations run afoul of this principle of law: they claim 'lack of substantiation' but fail to "particularly" allege how Willow's advertisements are false.

Take, for example, Statement 3—i.e., that Tirzepatide Drops are a "safe and popular alternative" to injections.  *See* Wesley Dec., Ex. A, at 1.  Putting aside that this statement is puffery and a non-actionable opinion (as described below), it is

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

insufficient for Eli Lilly to allege that the statement lacks substantiation in the form of a clinical trial or survey.  Rather, Eli Lilly must allege that Tirzepatide Drops are unsafe and/or are not a popular alternative to injections—something Eli Lilly cannot do while also complying with Rule 11.  The same logic dooms Statement Nos. 1–2 and 4–15, *see id*., Ex. A, at 1–4, to the extent they are allegedly false because they are "unsupported" rather than demonstrably false or deceptive.[3]

**(ii)    Eli Lilly cannot conclusorily allege that true statements imply something different than their plain meaning.**

Eli Lilly alleges that Willow's citation to various studies or scientific data falsely implies that the compounded drugs marketed by Willow have been studied and/or tested even though Willow says no such thing. Such conclusory assumptions are inadequate under Ninth Circuit law.  *See Kwan v. SanMedica Int'l,* 854 F.3d 1088 (9th Cir. 2017) ("[P]laintiff contends that [defendant's advertising] claims … falsely imply that defendant's product claims were based on credible scientific proof.  These allegations are conclusory and do nothing to support or prove the

---

[3] Eli Lilly takes certain Willow's advertisements out of context when purporting to assert a "lack of substantiation" (which is, as stated above, inadequate anyway). For example, Eli Lilly argues that Willow, in stating that its Tirzepatide Drops are an "even more effective weight loss treatment without injections," "claim[s] to provide a safe and effective alternative treatment but also one that offers superior outcomes to ZEPBOUND®, which FDA has approved to treat obesity."  *See* Wesley Dec., Ex. A, at 3, 4 (Statements 7, 12). The full statements, however, are as follows:  "Daily sublingual drops of compound Tirzepatide. Mimics two natural hormones produced in the gut, GLP-1 and GIP, leading to even more effective weight loss treatment without injections." These statements are immediately followed by the following: "Better results than Compound Semaglutide." In other words, a plain reading of the entirety of the advertisement plainly shows that Willow is not (as Eli Lilly alleges) comparing the efficacy of drops to injectables or FDA-approved medications, but rather is comparing tirzepatide drops to semaglutide drops and stating that the former is more effective in causing weight loss—something Eli Lilly itself touts.

falsehood of the claims").

Moreover, the assumption is illogical, considering that the studies and data on Willow's site are truthful (and Eli Lilly does not allege otherwise). Take, for example, Statement No. 4, *see* Wesley Dec., Ex. A, at 1, where Eli Lilly points to a clinical trial referenced on Willow's site in which Willow clearly identifies *the chemical tirzepatide* as the subject of the test. Eli Lilly says Willow's language "necessarily impl[ies] that Tirzepatide Drops themselves have been clinically tested." *See id.* Willow says no such thing.

In order to sufficiently allege deception based on an otherwise true statement, Eli Lilly would need evidence of consumers who were actually deceived in the way it is saying has occurred. Eli Lilly cannot allege the existence of such evidence, which is not surprising because consumers have the ability to (and do) understand that a reference to a study of "tirzepatide (lower case)" does not necessarily mean Tirzepatide Drops.

Nor does this Court need to accept the truth of counterintuitive and unsupported inferences, even at this early stage. Courts (including in a case brought by none other than Eli Lilly) have rejected plaintiffs' attempts to conclusorily plead illogical or unsupported inferences when dismissing false advertising claims at the pleadings stage. *See, e.g.*, *FedEx Ground Package* Sys.*, Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 455 (6th Cir. 2024) (affirming dismissal of false advertising claims at the pleadings stage where there was no showing of literal falsity and the statements read in context rendered the plaintiff's inferences unreasonable); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 479-80 (D.N.J. 1998) (dismissing under Rule 12(b)(6) false advertising claim based on implications that were not adequately supported by factual allegations).

In short, Eli Lilly fails to allege sufficiently that statements regarding studies or scientific data related to tirzepatide has been so deceptive as to be actionable.

### b.      Many of the statements are puffery.

"[A] statement that is quantifiable, that makes a claim as to the "specific or absolute characteristics of a product," may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (internal citations omitted); *see also Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024) ("[P]uffery is characterized by subjective claims, including merely stating in general terms that one product is superior.") (internal quotations and citation omitted).

The Ninth Circuit and District Courts therein routinely find general boasts about products to be non-actionable puffery. *See, e.g., Oracle*, 123 F.4th at 1001 ("Comparative assertions about effectiveness . . . are the kinds of generalized statements of product superiority that we have routinely found to be nonactionable."); *Favell v. Univ. of S. Cal.*, No. CV 23-3389-GW-MARx, 2024 WL 751006, at *7 (C.D. Cal. Jan. 23, 2024) (holding description of university as "top" to be puffery); *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *12 (N.D. Cal. Aug. 20, 2019) ("statements that a product is best in class, 'unsurpassed,' or 'state of the art'") (quoting *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018)); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (holding statement that product is "powerful" to be puffery); *Anunziato*, 402 F. Supp. 2d at 1140 (holding claims of "quality," "reliability," and "performance" to be puffery).

Eli Lilly challenges advertisements claiming that Willow's tirzepatide drops "have all the benefits of GLP-1s," that they "work nice," that they are a "safe and popular alternative" to, and more effective than, injections, that consumers will experience "[n]o more random snack cravings," that "[s]maller portions [will] feel just as satisfying," that the "feeling of being full [will] last[] longer after meals," and that "[d]ieting [will] feel[] natural and weight loss [will] seem[] effortless." *See*

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

Wesley Dec., Ex. A, at 1–3 (Statements 2, 3, 7, 9).  These are all general claims related to quality, and none of them, *see id.*, "contain a standard—either through absolute words or a measurable comparison—against which the statement may be tested and thus falsified," *Fusco v. Uber Techs.*, No. 17-00036, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018).  At minimum, Statement Nos. 2, 3, 7, 9, 12-14, and 15 are non-actionable puffery.

### c.      Eli Lilly fails to plead materiality or harm.

For the same reasons Eli Lilly cannot plead standing, it cannot plead materiality or harm.

The Safety and Effectiveness theory fails as a matter of law; statement numbers 1-15 are non-actionable and should be dismissed for the multiple reasons discussed above.

### 2.      Eli Lilly's Personalization Theory does not provide a basis for relief.

Eli Lilly's Personalization Theory, *see* Wesley Dec., Ex. A, at 4–5 (Statements 16–21), does not provide a basis for relief under the UCL, FAL, or Lanham Act because the alleged false statements are not deceptive, and they amount to puffery.

### a.      The statements are not deceptive.

Eli Lilly alleges that Willow's personalization claims regarding compounded medications are false, but they are not.

### (i)      Compounded drugs *are* personalized.

As alleged, Willow markets and sells drugs that are compounded pursuant to section 503A of the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA provides that compounded drugs are *necessarily* personalized because they are manufactured for "an identified *individual* patient based on the receipt of a *valid prescription* order or a notation, approved by the prescribing practitioner, on the prescription order that a compounded product is *necessary* for the *identified patient*."  21 U.S.C. § 353a(a)

3007558

-16-

Case No. 2:25-cv-03570-AB (MARx)

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

(emphasis added). Personalization does not mean that every compounded medication must be different for every patient; it, instead, need only be tailored to the specific goals of the patient. *Allergan USA, Inc. v. Imprimis Pharms., Inc.*, No. 8:17-cv-01551-DOC-JDE, 2019 WL 4545960, at \*11 (C.D. Cal. Mar. 27, 2019) ("[T]here is no requirement that the 503A compounded drugs be different for every patient . . . ."). That tailoring is achieved through the individual prescription process: physicians choose and prescribe the most appropriate drug formulation for a patient after consulting with them about their individual goals. *Id.* ("Imprimis can distribute compounded drugs under section 503A only pursuant to a valid patient-specific prescription.").

In other words, when Willow states that compounded tirzepatide "is a custom-prepared version of the drug, mixed specifically for a patient by a compounding pharmacy," *see* Wesley Dec., Ex. A, at 4 (Statement 18), that statement is true. A compounded drug from a Section 503A pharmacy must be patient-specific because it will only be dispensed upon receipt of a prescription for an individual person.

### (ii) <u>There is nothing false or deceptive about Willow's offerings.</u>

There is nothing false or deceptive about the types or dosages of the drugs that are advertised or offered on the Willow site. There is no allegation that a customer has, for example, ordered from Willow a one-of-a-kind medication or dose, but instead received a standard, one-size-fits-all drug. Indeed, a visitor to the Willow website sees exactly what types of drugs are offered and the size and dosage of each type. Burger King is not falsely advertising when it says "BK: Have It Your Way" even though Burger King's Whopper involves the same basic ingredients and not, say, macaroni. Willow is similarly not falsely advertising when it describes its offerings as "personalized," even if there are usual ingredients, sizes, and dosages offered on its site.

Nor has Eli Lilly alleged any particularized facts that would show that the statements regarding "personalized" drugs are deceptive, which is required.

### b.     The statements are puffery or opinion.

Willow's personalization advertisements are also non-actionable puffery and/or opinion. They are boastful and general in nature, and they do not make any specific or quantifiable claims. *See Cook, Perkiss & Liehe, Inc., v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Whether a drug has a particular ingredient, for example, or whether a drug is a particular size or shape, as another example, can be tested and proven true or false. Whether a drug is "personalized" is not subject to any empirical test or observation or objective standard.  The word is vague—it means different things to different people in different contexts.  *See Oracle*, 123 F.4th at 1001 (claim of "more security" was nonactionable puffery because "no objective, quantifiable metric to measure"); *see also FedEx*, 97 F.4th at 456–57 (statements regarding a "collapsing" financial model, "soaring levels of CSP default rates" and "financial distress" were non-verifiable opinion, rather than actionable statements of fact).

### c.     Eli Lilly fails to plead materiality or harm.

Once again, for the reasons discussed above related to standing, Eli Lilly has failed to plead materiality or harm.

Because Eli Lilly's Personalization Theory fails in all respects, Statement Nos.16-21 must be dismissed.

### 3.     Eli Lilly's Compliance Theory does not provide a basis for relief.

Eli Lilly's Compliance Theory, *see* Wesley Dec., Ex. A, at 5 (Statement 22), does not provide a basis for relief under the UCL, FAL, or Lanham Act because the alleged false statements are puffery, not false or misleading, and constitute non-actionable legal opinions. Moreover, there is no non-conclusory allegation that Statement 22 has been material to relevant consumers or harmed Eli Lilly.

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

### a.    The statements are puffery.

Eli Lilly's Compliance theory fails because the relevant advertisements are nonactionable puffery. Again, the term "high quality" has been held to be puffery. *Annunziato,* 402 F. Supp. 2d at 1141; *see also Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1008 (7th Cir. 2004). So has the word "reliable," as it is "inherently vague and general." *See id*. at 1139 (internal quotations omitted); *see also Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (claim of reliability not actionable because it is "incapable of objective verification and not expected to induce reasonable consumer reliance.").

And, as it is used here, "rigorous" also constitutes puffery, as it is boastful, and it amounts to an opinion as to the nature of the unspecified "evaluations" it characterizes. *Ariix v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021); *Kalin v. Semper Midas Fund, Ltd.*, No. 4:21-cv-01062-YGR, 2022 WL 16935782, at *4 (N.D. Cal. Oct. 12, 2022) ("the term rigorous is typical puffery"). There is, indeed, no objective definition of rigor: to some, a rigorous test may not be challenging at all, while for others, it may be just the opposite. *See Fusco*, 2018 WL 3618232, at *6. Because the rigor of something cannot be measured, tested, or falsified, *see id*., Willow's representation of same cannot constitute "a false statement *of fact*." *See Southland Sod*, 108 F.3d at 1139 (emphasis added).

### b.    The statements are not false or misleading.

Eli Lilly cites to FDA Form 483s and warning letters received by two of the various pharmacies that dispense the compounded drugs marketed by Willow. Based on those Form 483s and warning letters, Eli Lilly concludes that Willow is falsely advertising when it states that it partners with pharmacies that have "passed rigorous evaluations."

There are multiple flaws here.

First, Form 483s and warning letters are not final FDA actions. *See* FDA Regul. Proc. Manual, § 4-1-1; FDA Form 483 Q&A. They are tools commonly used

by the FDA to improve drug manufacturing reliability and safety, but the receipt of one in no way means or even implies that the manufacturer (or, in this case, pharmacy) is inadequate or has not "passed" some unspecified "evaluation." Indeed, if the receipt of FDA Form 483s and warning letters meant what Eli Lilly alleges, then Eli Lilly—which has been on the receiving end of multiple 483s and FDA warning letters, *see* Wesley Dec., Ex's. B–H—would be making false or misleading representations to the Court when alleging that it "manufactures its medicines under strict controls . . . to ensure that [its] medicines meet its rigorous quality and safety standards," and that it "develops and manufactures its medicines in compliance with FDA oversight," Compl. ¶¶ 17, 18.

Second, there is no allegation that the pharmacies that Willow partners with have *not* passed any rigorous evaluation. After all, it is common for a pharmacy to receive a Form 483 and/or warning letter at some point but ultimately pass inspection (as Eli Lilly knows from experience, *see* Wesley Dec., Ex's. B–H).  It is also possible that despite receiving a Form 483 and/or warning letter, the pharmacy passed an unrelated rigorous evaluation.  Finally, there is no non-conclusory allegation that the statement in question has deceived or is likely to deceive any customer.

### c.      The statements are non-actionable legal opinions.

Willow's claim that its partner pharmacies "pass rigorous evaluations" also constitutes a legal opinion, which, like non-legal opinions, are "not generally actionable as false statements . . . ."  *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. C 10-02605 JW, 2011 WL 5024281, at *11 (N.D. Cal. Oct. 13, 2011). "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). / / /

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

According to Eli Lilly, Willow's claim that its pharmacies pass "rigorous evaluations" is deceptive because it implies that the pharmacies are legally compliant when they are not. Any such claim on the part of Willow is a legal opinion because whether the pharmacies are compliant requires an interpretation of, at minimum, the FDCA, which is a "*complex* federal regulatory scheme governing pharmaceutical drugs . . . ." *In re Gardasil Prods. Liab. Litig.*, No. 3:22-MD-03036-KDB, 2025 WL 854377, at *5 (W.D.N.C. Mar. 11, 2025) (emphasis added).

Indeed, imagine the trial on this claim. What does it mean to "pass rigorous evaluations"? Do preliminary, non-binding letters from the FDA mean that the compounding pharmacy did not "pass" the evaluation, even though it is permitted to continue to operate? And that assumes that the "evaluations" that are referenced on the website even relate to the (in many instances years-old) Form 483s and warning letters allegedly received by two of the pharmacies that supply compounded medications to visitors to Willow's site.

Statement No. 22 is not a false or misleading "statement *of fact*." *See Southland Sod*, 108 F.3d at 1139 (emphasis added).

### d.    Eli Lilly fails to plead materiality or harm.

For the reasons discussed above related to standing, Eli Lilly has failed to plead materiality or harm.

Because Eli Lilly's Compliance Theory fails in all respects, Statement 22 must be dismissed.

### E.    The Court Should Not Grant Leave to Amend Because the Defects in Eli Lilly's Complaint Cannot Be Reasonably Cured.

Amendment would be futile here.  Eli Lilly cannot contradict its original allegations showing that the parties do not compete to save its Complaint. Moreover, none of Eli Lilly's alleged false statements are actionable, and no amendment will change that. The Court should thus deny leave to amend.

/ / /

## IV.    CONCLUSION

For the reasons stated above, the Court should grant the Motion and dismiss Eli Lilly's Complaint without leave to amend.

DATED:  June 20, 2025                    ELLIS GEORGE LLP
                                         Keith J. Wesley
                                         Christopher W. Arledge
                                         Matthew L. Venezia
                                         Anthony T. Lombardo


                                   By:  _____*s/ Keith J. Wesley*_____
                                         Keith J. Wesley
                                         Attorneys for Defendant Willow Health
                                         Services, Inc.

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Willow Health Services, Inc., certifies that this brief contains 6,817 words, which:

☒ complies with the word limit of L.R. 11-6.1.

DATED: June 20, 2025                    */s/Keith J. Wesley*

Keith J. Wesley

NOTICE OF MOTION AND MOTION OF WILLOW HEALTH SERVICES, INC. TO DISMISS COMPLAINT