UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:25-cv-03570-AB-MAR | Date: | August 29, 2025 |
|---|---|---|---|

| Title: | *Eli Lilly and Company v. Willow Health Services, Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>GRANTING</u> DEFENDANT'S MOTION TO DISMISS [33]

    Pending before the Court is Defendant Willow Health Services, Inc.'s ("Willow" or "Defendant") Motion to Dismiss (Dkt. No. 33, "Motion" or "Mot.") Plaintiff Eli Lilly and Company's ("Eli Lilly" or "Plaintiff") Complaint (Dkt. No. 1, "Compl."). In support of its Motion, Defendant also filed a Request for Judicial Notice (Dkt. No. 34, "RJN"). Plaintiff filed an opposition to the Motion (Dkt. No. 37, "Opp."). Defendant filed a reply (Dkt. No. 38). The Court heard oral argument on August 22, 2025, hearing. For the following reasons, Defendant's Motion is <u>**GRANTED**</u>.

    **I.    BACKGROUND**

    Defendant Willow Health Services, Inc. is a "technology platform to connect registered users of [its] Website with Physicians and pharmacies for medical consultations and dispensing of medications prescribed by the Physicians." (Mot. at 2). Defendant markets on its website compounded medications, which incorporate tirzepatide. (*Id.*) Tirzepatide is the active ingredient found in Plaintiff

Eli Lilly and Company's MOUNJARO® and ZEPBOUND®, "which are the only FDA-approved tirzepatide medicines." (Compl. ¶ 2). According to Plaintiff, its tirzepatide medicines are tested and approved only for under-the-skin injections (not for administration in any oral form), to treat serious diseases, such as type 2 diabetes and chronic weight management issues in obese adults and overweight adults with at least one weight-related conduction (not for cosmetic weight loss), and without additives, such as vitamins. (*Id.*)

In contrast, Defendant Willow's compound tirzepatide drugs are in "oral form," mixed with "additives," and are marketed for "cosmetic weight loss." (Compl. ¶ 3). Plaintiff alleges Defendant's tirzepatide drugs are not FDA-approved, and Defendant's marketing and sale of its "untested and unapproved compounded tirzepatide drugs [is] unfair, deceptive, false, and misleading in multiple ways—and create[s] a significant risk to patient safety." (*Id.*) In its Complaint, Plaintiff alleges the five main issues it has with Defendant's advertisements of its products. (*See generally*, Compl.)

First, Plaintiff alleges that Defendant unfairly and deceptively sells the compounded tirzepatide drugs to treat "cosmetic weight loss," yet Plaintiff alleges that no clinical trial has examined tirzepatide for cosmetic weight loss. (Compl. ¶ 4). As such, Plaintiff alleges that MOUNJARO® and ZEPBOUND® are not approved for cosmetic weight loss, only for serious medical conditions, and Defendant's "marketing and sale of its compounded tirzepatide drugs for cosmetic weight loss [is] concerning…." (*Id.*)

Second, Plaintiff alleges that Defendant "unfairly and deceptively markets and sells Tirzepatide Drops, which it describes as 'a needle-free alternative to injunctions, offering powerful weight loss benefits in an easy-to-use, once-daily sublingual form.'" (Compl. ¶ 5). Further, Defendant claims that "Tirzepatide Drops 'promote[] feelings of fullness and reduce[] appetite, leading to weight loss." (*Id.*) Plaintiff alleges that these statements are false, and selling Tirzepatide Drops is deceptive because Plaintiff alleges that no clinical study has demonstrated that any oral formulation of tirzepatide is safe and effective for human use. (*Id.*)

Third, Plaintiff alleges that Defendant "unfairly and deceptively markets and sells its other tirzepatide drug, Tirzepatide Plus, which [Defendant] describes as a '[p]remium GLP-1 blend featuring a full does of Tirzepatide enhanced with Niacinamide (Vitamin B3) to support weight loss and boost energy levels.'" (Compl. ¶ 6). Plaintiff alleges that Defendant has no basis for these claims because "its blend of tirzepatide with additives has never been clinically studied." (*Id.*)

Fourth, Plaintiff alleges that Defendant sells both its Tirzepatide Drops and Tirzepatide Plus with the promise that they are custom-made, "personalized" drugs, which Plaintiff claims is unfair and deceptive because Defendant's "untested and unapproved drugs" are "standardized compound tirzepatide drugs in predetermined dosages." (Compl. ¶ 7).

Fifth, Plaintiff alleges that Defendant falsely claims that the compounding pharmacies it works with "pass rigorous evaluations and are subject to the same high standards," yet Plaintiff alleges Defendant sources its drugs from compounding pharmacies who have "serial records of regulatory violations." (Compl. ¶ 8).

In sum, Plaintiff alleges that Defendant's "unfair and deceptive practices endanger patients by luring them away from [Plaintiff's] safe and effective FDA-approved medicines in favor of [Defendant's] untested and unapproved drugs—all under false pretenses." (Compl. ¶ 9). On April 23, 2025, Plaintiff filed suit against Defendant, alleging Unfair Competition in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq), False Advertising in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17500 et seq), and False or Misleading Advertising and Promotion in violation of 15 U.S.C. § 1125(a)(1)(B) ("Lanham Act"). (Compl. at 28-31).

On June 20, 2025, Defendant filed this Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief. (*See generally*, Mot.) First, Defendant argues that Plaintiff lacks standing to sue. (*Id*. at 2). Specifically, Defendant argues that Plaintiff does not compete with Defendant, and Plaintiff "has not and cannot sufficiently allege a competitive injury under the three statues under which it has sued" because the only harm pled by Plaintiff is "harm to consumers" and "vague, implausible reputational harm." (*Id.*) Second, Defendant argues that even if Plaintiff had standing to sue, the Court should still dismiss the Complaint under Rule 12(b)(6) because none of the alleged false or misleading statements are actionable because they are puffery or non-actionable opinions. (*Id.*)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires a plaintiff's pleading to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must further make all reasonable inferences in the plaintiff's favor. *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III. DISCUSSION

### A. Request for Judicial Notice

In a motion to dismiss, the court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

Defendant requests the Court take judicial notice of seven exhibits. (*See* Dkt. No. 34, "RJN.") Specifically, Defendant requests the Court take notice of the following:

1. FDA Form 483 to Eli Lilly & Co. ("Eli Lilly"), published January 17, 2024 (RJN; Ex. B);
2. FDA Form 483 to Eli Lilly, published August 12, 2021 (RJN; Ex. C);
3. FDA Form 483 to Eli Lilly, published May 1, 2023 (RJN; Ex. D);
4. FDA Form 483 to Eli Lilly, published March 24, 2025 (RJN; Ex. E);
5. FDA Form 483 to Eli Lilly, published on March 24, 2025 (RJN; Ex. F);
6. FDA Warning Letter 2001-DT-12 to Eli Lilly, dated March 2, 2001 (RJN; Ex. G); and
7. FDA Warning Letter SJN-2010-03 to Eli Lilly, dated February 5, 2010 (RJN; Ex. H).

Plaintiff does not object to the admission of the Exhibits.

Although the scope of review on a motion to dismiss is generally confined to the contents of the complaint, a court may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Lacayo v. Seterus, Inc.*, No. CV 17-02783-AB (JEMx), 2017 WL 8115535, at *3 (C.D. Cal. Aug. 2, 2017) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Here, Defendant alleges that the Court may take judicial notice of these exhibits because they are self-authenticating as they come from the FDA's website. Further, Defendant argues that "FDA warning letters available on the FDA's website are . . . appropriate subjects of judicial notice." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1099 (S.D. Cal. 2015); *see also In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1117 n.39 (C.D. Cal. 2012) ("The court can take judicial notice of the [FDA Warning] letter as a report of an administrative body."). Because these exhibits come from the FDA's website and Plaintiff does not object to their admission, the Court **GRANTS** Defendant's Request for Judicial Notice.

### B. Statutory Standing

As a threshold matter, Defendant argues that Plaintiff's False Advertising Lanham Act claim fails for lack of statutory standing. (Mot. at 7). Because standing is a threshold issue, the Court will address Defendant's jurisdictional challenges first. *See, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578

(1999) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter[.]").

To establish statutory standing under the Lanham Act, Plaintiff must satisfy a more demanding standard than constitutional standing. *See Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASX), 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021). The heightened standing test under the Lanham Act has both a "zone of interests" and a "proximate cause" requirement. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.* ("*Lexmark*"), 572 U.S. 118, 131-32 (2014). The first prong obligates a plaintiff to adequately allege "an injury to a commercial interest in reputation or sales." *Id.* The second prong requires that a plaintiff plead, with the requisite particularity, "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, which occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* Put simply, Plaintiff must allege (1) a commercial injury, such as reputation or sales, and (2) that the injury is competitive, or harmful to the plaintiff's ability to compete with the defendant. *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

### 1. Zone of Interests

Regarding the first part of this analysis, the "zone of interest" test is not a particularly demanding one, and the benefit of the doubt goes to the one alleging the cause of action. *Lexmark,* 572 U.S. at 130. "[T]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id*. (citation and quotations omitted). In the false advertising context, Congress' goal was to protect persons engaged in commerce against unfair competition. *Id*. Thus, "to come within the zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales" as opposed to an allegation a consumer or business was misled into purchasing disappointing or inferior products. *Id*. at 131-32.

If the plaintiff can demonstrate that the defendant is a direct competitor, there is a presumption of a commercial injury to plaintiff sufficient to establish standing. *TrafficSchool.com, Inc. v. Edriver Inc.* ("*TrafficSchool.com*"), 653 F.3d 820, 827 (9th Cir. 2011). In *TrafficSchool.com*, the Ninth Circuit explained that the presumption of a competitor suffering a commercial injury is because competitors "'vie for the same dollars from the same consumer group,' and a misleading ad can

upset their relative competition." *Id.* (citing *Kournikova v. Gen. Media Commc'ns, Inc.*, 278 F.Supp.2d 1111, 1117 (C.D. Cal. 2003).

Here, Defendant argues that it is not a direct competitor of Plaintiff because Plaintiff alleges that it sells a "wholly different" product than Defendant: "[Defendant's] compounded tirzepatide drugs could not be more different. One is in oral form, rather than an under-the-skin injection. The other is mixed with additives. It markets and sells both for 'cosmetic weight loss.'" (Compl. ¶ 3). In response, Plaintiff argues that Defendant does compete with Plaintiff as "its comparisons and citations of [Plaintiff] and citations to [Plaintiff's] studies show." (Opp. at 6). Plaintiff's claims that its tirzepatide drugs are used to treat type 2 diabetes, chronic weight management, and obstructive sleep apnea, *Id.* ¶¶ 38-39, but argues that Defendant "markets and sells [compounded tirzepatide drugs] for 'cosmetic weight loss,'" *id.* at ¶ 3.

Ultimately, Defendant's competition with Plaintiff is "reflected in [Defendant's] advertising itself," which "draws direct comparisons" between both tirzepatide products. *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 11593043, at *4 (N.D. Cal. Aug. 16, 2021). Indeed, Defendant advertises that it has the "same active ingredient as MOUNJARO® and ZEPBOUND®." (Compl. ¶ 63). Based on this statement, Defendant and Plaintiff thus "vie for the same dollars from the same consumer group"—consumers with diabetes or obesity who want to lose weight. *TrafficSchool.com, Inc.*, 653 F.3d at 827. As such, the Court concludes that Plaintiff has sufficiently alleged that Defendant and Plaintiff are direct competitors.

However, finding Defendant and Plaintiff are direct competitors does not conclusively establish that Plaintiff has suffered a commercial injury. Indeed, when a "plaintiff competes directly with defendant, a misrepresentation will give rise to a *presumed* commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc.*, 653 F.3d at 827 (emphasis added). This presumption may be rebutted if Defendant can point to evidence that might tend to rebut the presumption. *Id.* (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578 (7th Cir. 2001)).

Defendant points to the fact that Plaintiff's Complaint lacks sufficient factual allegations to establish an injury. (Mot. at 7-10). *See TrafficSchool.com*, 653 F.3d at 825 (a plaintiff can allege its "injury (1) by using lost sales data, that is actual market experience and probable market behavior, or (2) by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's

business."); *see also Allbirds, Inc. v. Giesswein Walkwiaren AG*, No. 19-05638, 2020 WL 6826487, *4 (N.D. Cal. June 4, 2020).

For example, in *TrafficSchool.com*, the Ninth Circuit found that the plaintiffs alleged facts to establish a sufficient injury by (1) "introduce[ing] ample evidence that [plaintiffs] compete[d] with defendants for referral revenue – sometimes partnering with the same third-party traffic school or driver's [education] course providers" such that "sales gained by one are thus likely to come at the other's expense"; and (2) presenting survey and testimonial evidence that being referred by DMV affected consumers' choice in traffic school and drivers education courses, such that the defendant's false advertisement (i.e., misleading customers into thinking they were referred by DMV) could lead to a bigger share of the referral market. 653 F.3d at 825-26.

However, here, Plaintiff has failed to plead a single lost sale as a result of Defendant's alleged false advertising. Plaintiff does not allege whether sales of its tirzepatide medications decreased, when that decrease occurred, or to whom Plaintiff lost sales. Further, Plaintiff has failed to allege a single instance, either via survey or testimonial evidence, where a consumer decided to select a compounded tirzepatide provided by Defendant instead of Plaintiff's products because of any alleged false advertisements made by Defendant.

Rather, Plaintiff alleges in a conclusory fashion that, because of Defendant's advertisements, consumers "may conclude that any tirzepatide is ineffective," or "may even draw unwarranted conclusions about the safety and effectiveness of [Plaintiff's] FDA-approved tirzepatide medicines" or the advertisements may "steer patients away from [Plaintiff's] tested, proven medicines." (Compl. ¶¶ 89, 102). These allegations fall short of the pleading requirements set forth in *Lexmark*. Plaintiff has provided no plausible "chain of inferences" showing how Defendant's advertisements could harm Plaintiff's business. Further, Plaintiff has not alleged it relied on "actual market experience and *probable* market behavior" for its conclusion that Defendant is "luring" its potential consumers away from Plaintiff. *TrafficSchool.com*, 653 F.3d at 825. Even if Plaintiff did not have data about lost sales, Plaintiff could have presented testimony or survey evidence that indicated consumers may be swayed one way or another to Defendant's product. Instead, Plaintiff only provides conclusory allegations.

As such, the Court concludes Plaintiff has failed to sufficiently allege a commercial injury to place Plaintiff in the zone of interest in a suit for false advertising under the Lanham Act.

### 2. Proximate Cause

Aside from failing to allege Plaintiff falls within the zone of interests, Plaintiff has also failed to allege proximate cause required under *Lexmark*. To establish proximate cause under the Lanham Act, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Proximate causation may be adequately alleged when "there is likely to be something very close to a 1:1 relationship between" a plaintiff's lost sales and the sales diverted to a defendant. *Id.* at 139.

In *Lexmark*, the plaintiff sufficiently alleged a "1:1 relationship between the number of refurbished Prebate cartridges sold (or not sold) by the remanufacturers and the number of Prebate microchips sold (or not sold) by [plaintiff]." 572 U.S. at 139. There, the plaintiff "adequately alleged proximate causation by alleging that it designed, manufactured, and sold microchips that both (1) were necessary for, and (2) had no other use than, refurbishing Lexmark toner cartridges." *Id.* Thus, "if the remanufacturers sold 10,000 fewer refurbished cartridges because of [the defendant's] false advertising, then it would follow more or less automatically that [the plaintiff] sold 10,000 fewer microchips for the same reason." *Id.* at 140.

Here, Plaintiff's complaint fails to plead facts showing anything like a 1:1 relationship between Plaintiff's lost sales and any potential sales diverted to Defendant due to its false advertising. Plaintiff pleads no direct link or even any facts suggesting some chain of inferences between a consumer (a patient) seeing Defendant's advertisement and then buying compounded medication instead of Plaintiff's medication. Even further, Plaintiff ignores the simple fact that regardless of what an advertisement says or what a consumer wants to buy, obtaining a prescription medication requires a physician to prescribe it. A physician prescribing a compounded medication is the proximate cause of a consumer/patient using compounded medication instead of Plaintiff's medication. Plaintiff's cited cases do not address this intervening proximate cause, because each involves products that consumers could purchase without a prescription. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (involving non-prescription based supplements); *see also Lexmark*, 572 U.S. at 120-21 (involving printer cartridges). Thus, Plaintiff's proximate cause arguments fail because Defendant's advertisements are not what "causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133.

As such, the Court concludes Plaintiff has failed to adequately allege proximate causation. Because Plaintiff has failed to sufficiently allege both a commercial injury and proximate cause, Plaintiff has failed to establish standing under the Lanham Act. For this reason, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Lanham Act claims.

### 3. Standing Under the UCL and FAL

Because Plaintiff lacks standing under the Lanham Act, Plaintiff also lacks standing under its remaining two state law causes of action, Unfair Competition ("UCL") and False Advertising ("FAL"). Both UCL and FAL, which have stricter requirements for standing than the Lanham Act. Injuries under the UCL and FAL must involve tangible loss—i.e., "lost money or property." "Private suits must also allege standing under the UCL and FAL, i.e., that the plaintiff "suffered injury in fact" and "lost money or property as a result of unfair competition." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320-21 (2011). There is a two-part test for standing under the UCL and FAL: the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 322 (emphasis in original); *see also Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 986 (9th Cir. 2015)

As stated above, Plaintiff does not claim any such injury in its complaint. Rather, the Complaint only has the following conclusory language:

> As a direct and proximate result of Willow's deceptive and unfair business practices, Willow has obtained an unfair and illegal business advantage, thereby benefitting and profiting from sales it made as a result of goodwill associated with Lilly's MOUNJARO® and ZEPBOUND® tirzepatide medicines. Lilly has suffered and will continue to suffer monetary damages that can be measured and quantified as well as discernible competitive injury by the loss of goodwill.

Compl. ¶¶ 96, 106. Because Plaintiff has failed to allege lost money or property as a result of unfair competition, Plaintiff lacks standing under these statutes. *Marco Bicego S.P.A. v. Kantis*, No. 17-CV-00927-SI, 2017 WL 2651985, at *5 (N.D. Cal. June 20, 2017) ("Plaintiffs do not cite any authority for the proposition that injury

to reputation, in the absence of loss of money or property, is sufficient to confer standing under the UCL.").

Because Plaintiff does not have standing for any of its claims, the Court **GRANTS** Defendant's Motion to Dismiss for Plaintiff's state law claims.

### C. Failure to State a Claim

Even if Plaintiff had sufficiently alleged it had standing, Plaintiff fails to sufficiently allege false advertising. To "survive a rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to avoid" dismissal. *Id*. (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)). Legal conclusions may provide a framework for a complaint, but "they must be supported by factual allegations." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To establish a false advertising claim under the Lanham Act, a plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.*

In the Ninth Circuit, claims of unfair competition and false advertising under

the state law claims of violations of False Advertising Laws ("FAL") and Unfair Competition Laws ("UCL") are substantially congruent to the federal claims made under the Lanham Act. *CytoSport, Inc. v. Vital Pharm., Inc*., 894 F. Supp. 2d 1285, 1295 (E.D. Cal. 2012); *see also Cleary v. News Corp*., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act"). "). As such, the Court will consolidate the analysis of the Lanham Act claims and the state law claims.

In its Complaint, Plaintiff alleges that twenty-two of Defendant's statements are false or misleading, asserting three theories of liability: (1) safety and effectiveness (Statement Nos. 1-15); (2) personalization (Statement Nos. 16-21); and (3) compliance (Statement No. 22).

### Safety and Effectiveness

1. "First GLP-1 treatment program for cosmetic weight loss;" (Compl. ¶ 37)
2. "…you get all the benefits of GLP-1s," and "[t]he drops work nice. They don't require an injection," "the needle free way to shed pounds and feel amazing," "you DON'T need extreme diets or painful injections to see real results!" (*Id.* ¶ 46)
3. Describing the Tirzepatide Drops as a "safe and popular alternative" to injections; (*Id.* ¶ 47)
4. Falsely relies on "clinical trials" and identifies "[c]ommon side effects of tirzepatide," and expressly references "[c]linical trials" for tirzepatide when discussing Tirzepatide Drops; (*Id.* ¶ 48)
5. Tirzepatide Drops "[m]imic[] two natural hormones produced in the gut, GLP-1 and GIP, leading to even more effective weight loss treatment without injunctions," and "[t]he science behind Tirzepatide Drops" that "Tirzepatide…works by targeting two key receptors involved in glucose and energy regulation:…[b]y activating these receptors, Tirzepatide enhances insulin secretion in response to meals, inhibits glucagon release, and slows gastric emptying, which helps to control blood sugar levels. Additionally, it promotes feelings of fullness and reduces appetite, leading to weight loss." (*Id.* ¶ 49)
6. Tirzepatide Drops "are administered via daily doses under the tongue," and that "[s]ublingual medication works by placing the drug under the tongue," and that "[t]he area under the tongue has a rich supply of

blood vessels, which allows the medication to bypass the digestive system and liver." (*Id.* ¶ 54)
7. Tirzepatide Drops are an "even more effective weight loss treatment without injections." (*Id.* ¶ 55)
8. Tirzepatide Plus "may enhance metabolic function, neurological health, and musculoskeletal strength, helping patients maintain vitality and wellness throughout their treatment journey," and "helps regulate blood sugar, suppress appetite, and promote fat loss, providing an effective pathway toward weight management." (*Id.* ¶ 59)
9. Consumers will experience "[n]o more random snack cravings," that "[s]maller portions [will] feel just as satisfying," that the "feeling of being full [will] last[] longer after meals," and that "[d]ieting [will] feel[] natural and weight loss [will] seem[] effortless." (*Id.*)
10. "Clinical trials suggest that tirzepatide offers superior efficacy in both glucose lowering and weight reduction compared to semaglutide." (*Id.* ¶ 61).
11. Defendant cites to an article from The Lancet stating, "[t]hese highly effective anti-obesity medications are associated with weight losses of more than 10% of overall bodyweight in more than two-third of clinical trial participants," and refers to a Harvard Health Publishing article stating, "[i]n studies, a weekly injection caused dramatic amounts of weight loss and improved other heart-related risk factors." (*Id.*)
12. "[Defendant] explicitly states that its manipulated Tirzepatide Plus drug works better than [Plaintiff's] safe, effective, and FDA-approved medicines." (*Id*. ¶ 63).
13. "[s]ame active ingredient" as MOUNJARO® and ZEPBOUND®, Willow says that Tirzepatide Plus has "better results than Tirzepatide." (*Id.*)
14. Defendant's webpage for Tirzepatide Plus markets it as "[g]amechanging weight loss medication." (*Id.* ¶ 65)
15. Defendant displays even more quotes from publications, including one from Medpage Today that misleadingly suggests Tirzepatide Plus—which has not been subject to clinical studies—is "[t]he most effective drug intervention we have seen for weight management." (*Id.*)

## Personalization

16. Tirzepatide Plus is a "[p]remium, personalized blend" that "offers more than just weight loss." (*Id.* ¶ 66)
17. Defendant tells consumers they will receive "GLP-1 weight-loss

medication, personalized for you and your body." (*Id.* ¶ 68)
18. "Compounded Tirzepatide is a custom-prepared version of the drug, mixed specifically for a patient by a compounding pharmacy." (*Id.*)
19. Defendant claims to offer "[p]rescription weight loss, made for you." (*Id.*)
20. Defendant claims Tirzepatide Plus is a "[p]remium, personalized blend." (*Id.* ¶ 69).
21. Defendant describes Tirzepatide Plus as a "[s]pecially crafted for individual patient needs." (*Id.* ¶ 70)

## Compliance

22. Defendant Willow states that that its compounded Tirzepatide Drops and Tirzepatide Plus are "reliable, high-quality medication" and that it "partner[s] with leading compounding pharmacies that pass rigorous evaluations." (*Id.* ¶ 74).

Defendant argues that none of the alleged false statements are false or deceptive because many of the statements are puffery and/or opinion, and none have been shown to be material or harmful. (Mot. at 11).

### 1. Safety and Effectiveness

First, Plaintiff argues that Defendant falsely claims its products are supported by "clinical studies" that do not exist or were not about its products at all. (Opp. at 11). Specifically, Plaintiff argues that, in Defendant's advertisements for Tirzepatide drops, Defendant cites to "[c]linical trials" and proposes to explain the "science behind Tirzepatide Drops," claiming they "target[] two key receptors involved in glucose and energy regulation." (*Id.*) (citing Compl. ¶¶ 48-49). Plaintiff alleges that these statements are not supported by any data. (*Id.*) In response, Defendant argues that these arguments are based on Defendant's lack of substantiation, which does not equate to falsity. (Motion at 12).

California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition laws. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017). The district court in *Kwan* stated: "Individuals may not bring suit under the UCL or the CLRA alleging only that advertising claims *lack substantiation*" because that "right is reserved to 'the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney....' " 854 F.3d at 1091. As such, the district court instructed that if

the plaintiff chose to amend her complaint, "she must allege facts from which the [c]ourt can conclude that Defendant's advertising representations were false." The court continued, "it is not enough for Plaintiff to attack the methodology of Defendant's study; instead, she must allege facts affirmatively disproving Defendant's claims." *Id.* District courts in California have likewise dismissed claims that rely on a lack of substantiation theory. *See, e.g.*, *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) ("Claims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws.... [A] plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim."); *Aloudi v. Intramedic Rsch. Grp., LLC*, No. 15-CV-00882-HSG, 2015 WL 4148381, at *4 (N.D. Cal. July 9, 2015) ("The Court finds that, as a matter of law, Plaintiffs cannot bring consumer protection claims solely on the basis of a lack of substantiation.").

Plaintiff argues that it is not challenging the validity of the clinical studies referenced in Defendant's advertisements but is rather asserting that Defendant's claim that its *products* themselves have been clinical proven to cause and maintain weight loss are false because the products themselves have not undergone any clinical testing at all. (Opp. at 11-12) (citing *McCracken v. KSF Acquisition Corp.*, No. 5:22-CV-01666-SB-SHK, 2023 WL 5667869 at *4, (C.D. Cal. Apr. 4, 2023)). However, nowhere in the Complaint is it alleged that Defendant advertised that its products were clinically tested. Rather, Defendant refers to the clinical testing done in reference to Tirzepatide. Such conclusory assumptions are inadequate under Ninth Circuit law. *See Kwan v. SanMedica Int'l,* 854 F.3d 1088 (9th Cir. 2017) ("[P]laintiff contends that [defendant's advertising] claims … falsely imply that defendant's product claims were based on credible scientific proof. These allegations are conclusory and do nothing to support or prove the falsehood of the claims"). As such, the Court concludes that these statements fail to state a claim under its safety and effectiveness theory.

### 2. Personalization

Plaintiff alleges that Defendant's claims, Statement Nos. 16-21, regarding their compounded products being "personalized" are false. (Compl. ¶¶ 67–72). Defendant markets and sells drugs that are compounded pursuant to Section 503A of the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA provides that compounded drugs are personalized because they are manufactured for "an identified individual patient based on the receipt of a valid prescription order or a notation, approved by the prescribing practitioner, on the prescription order that a

compounded product is necessary for the identified patient." 21 U.S.C. § 353A(a). Personalization does not mean that every compounded medication must be different for every patient; it, instead, need only be tailored to the specific goals of the patient. *Allergan USA, Inc. v. Imprimis Pharms., Inc.*, No. 8:17-cv-01551-DOC-JDE, 2019 WL 4545960, at *11 (C.D. Cal. Mar. 27, 2019) ("[T]here is no requirement that the 503A compounded drugs be different for every patient . . . ."). As such, when Defendant states that a compounded tirzepatide "is a custom-prepared version of the drug, mixed specifically for a patient by a compounding pharmacy," such a statement is true. Thus, Plaintiff has failed to state a claim under its personalization theory.

### 3. Compliance

Third, Plaintiff attacks Defendant's statement that its compounded Tirzepatide Drops and Tirzepatide Plus are "reliable, high-quality medication," and that it "partner[s] with leading compounding pharmacies that pass rigorous evaluations." (Compl. ¶ 74). Plaintiff alleges that the "FDA and multiple Boards of Pharmacy have observed persistent safety and qualify issues and documented significant regulatory violations at the pharmacies from which [Defendant] sources its tirzepatide drugs." (*Id.* ¶ 75). In its Motion, Defendant argues that its claim that its partner pharmacies "pass rigorous evaluations" constitutes a legal opinion, which are "not generally actionable as false statements." (Mot. at 20) (citing *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. C 10-02605 JW, 2011 WL 5024281, at *11 (N.D. Cal. Oct. 13, 2011).

"A specific and measurable advertisement claim of product superiority based on product testing is not puffery." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). However, the word "rigorous" can be actionable "when used as a qualifier or basis of comparison." *See Sanders v. Realreal, Inc.*, No. 19-CV-07737-EJD, 2021 WL 1222625, at *10 (N.D. Cal. Mar. 31, 2021). In *Ahern v. Apple, Inc.*, the court reasoned that the statement that Apple products underwent "rigorous testing methods that simulated customers' experiences" was actionable because the statement "arguably promised that Apple subjected its products to some form of testing and is therefore a 'specific factual assertion which could be established or disproven.'" 411 F.3d 541, 557 (N.D. Cal. 2019) (citations omitted).

However, here, the statement that Defendant "partner[s] with leading compounding pharmacies that pass rigorous evaluations" is non-actionable puffery and opinion. Unlike *Ahern*, where the statements identified a type of testing or

evaluation that was completed (i.e.: simulating customers' experiences), there is no such identification here. Rather, Defendant states that the compounding pharmacies have "pass[ed] rigorous evaluations." There is no specific factual assertion regarding the "evaluations" the compounding pharmacies underwent, which Court can discern happened or did not happen let alone whether they were "rigorous." As such, the Court concludes Statement No. 22 is not actionable.

Because Plaintiff cannot allege that Defendant's statements are false under any theory, Plaintiff has failed to state a claim upon which relief can be granted. As such, the Court **GRANTS** Defendant's Motion to Dismiss.

## IV. CONCLUSION

Leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a "'district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Because the Court is ordinarily reluctant to grant a motion to dismiss without leave amend when pleading deficiencies have not been previously addressed, it will provide Plaintiffs an opportunity to re-plead their claims.

As such, Plaintiff's Complaint is **DISMISSED** without prejudice and with leave to amend. The Court will permit Plaintiff leave to amend that claim if they can do so consistent with this Order and Fed. R. Civ. P. 11. Any amended Complaint must be filed within **30 days** of this Order.

**IT IS SO ORDERED**.